## GEORGE JENKINS v. STATE OF MISSISSIPPI.

1. INTOXICATING LIQUORS. *Procuring for inebriate.* *Knowledge.* *Code 1892, §1594.*

   Knowledge is not of the essence of the offense created by Code 1892, § 1594, making it unlawful to procure intoxicants for one in the habit of becoming intoxicated.

2. SAME. *Indictment.* *Surplusage.*

   If it be charged in an indictment for such offense that the accused knew that the person for whom the intoxicants were procured was in the habit of becoming intoxicated, and that the accused was not his parent or guardian and did not stand in *loco parentis* to such person, the averments are surplusage and need not be proved.

3. SAME. *Actual delivery.*

   It is unnecessary to prove in such case that the defendant actually delivered the intoxicants to the inebriate for whom they were procured, since one can procure an article for another without making the actual delivery.

FROM the circuit court of Tishomingo county.

HON. EUGENE O. SYKES, Judge.

Jenkins, appellant, was indicted, tried, and convicted, under Code 1892, § 1594, of procuring intoxicants for one Brown, a person in the habit of becoming intoxicated, and appealed to the supreme court.

The proof was that Jenkins and Brown lived in Iuka, Miss., near the Alabama line, and Brown gave some money to Jenkins to buy whisky with, and Jenkins went to Cherokee, just over the state line in Alabama and bought the whisky, and started back to Iuka with it, but before he got into Mississippi he handed the jug of whisky to a boy on the train for safe-keeping,

and did not take it into his actual custody any more. When he reached Iuka he was arrested, and some whisky he had was taken from him, and the jug he had bought for Brown was also gotten by the officer from the boy, and was never delivered to Brown at all. The proof also shows that Brown was in the habit of becoming intoxicated.

*Candler & Sawyer,* for appellant.

Under section 1594, Code 1892, to sustain a conviction for "procuring whisky for a person in the habit of becoming intoxicated," it must be shown that the whisky was delivered to the person for whom it was obtained. The word "procure" has more in it than the mere fact of one person getting whisky into his possession for another. It also includes the delivery of the whisky to the person for whom it was obtained who is in the habit of getting drunk, as he is the person the statute was passed to protect, and no injury can be done him unless the whisky is delivered to him. In this case, the whisky was never delivered to Brown, the person in the habit of getting drunk.

Further, there is no evidence in the record that Jenkins was not the guardian, etc., of Brown. Having alleged that, the state must prove it; criminal statutes must be strictly construed.

Further, appellant never had the whisky in his possession in Mississippi. He bought it from a licensed dealer in Alabama and put in possession of a boy in Alabama and never had it himself any more.

*J. N. Flowers,* assistant attorney general, for appellee.

Section 1594 of the Code of 1892 makes it a crime to procure liquor for one who is in the habit of becoming intoxicated. Counsel for appellant contend that the crime was not completed until the liquor is delivered to the person for whom it was intended.

The criminal act is done when the liquor is procured for the unlawful purpose; procuring is the act condemned by the statute. It may be true that in such case the inebriate does not suffer, but the law punishes for crime whether any individual has suffered or not. The criminal act has proceeded well on its way when the liquor has been obtained for the person in the habit of becoming intoxicated, with his money, and the accused has been prevented from going further and delivering the goods only by the timely interference of an officer who arrests him for the crime he has committed.

It was not necessary under the statute to allege in the indictment that accused was not the guardian or in *loco parentis* to the one for whom the liquor was procured.

CALHOON, J., delivered the opinion of the court.

The indictment is drawn under the concluding clause of code, sec. 1594. That whole section is in these words:

"Sec. 1594. If any person, whether having license to retail liquors or not, shall sell any vinous, alcoholic, malt, intoxicating or spirituous liquor, or intoxicating bitters or other drink which if drunk to excess will produce intoxication, in any quantity to any person in the habit of becoming intoxicated, to any Indian, or to any minor, or, not being *a parent, guardian, or in loco parentis to the, minor,* shall *procure* such liquor, bitters or drink *for a minor,* or shall procure the same for an Indian, or for a person in the *habit of becoming intoxicated,* he shall, on conviction, be fined not less than one hundred dollars nor more than one thousand dollars, or imprisoned in the county jail not exceeding six months, or both." (Italics ours.)

It is true that the indictment reads: "Did unlawfully procure vinous and spirituous liquor for W. S. Brown, knowing the said Brown to be in the habit of becoming intoxicated, not then and there being the parent and guardian of said Brown, nor in *loco parentis* to said Brown, etc." The word "knowing"

is pure surplusage, knowledge being not at all essential to the offense. The other words underscored in the above copy of the statute are also useless and immaterial, since they refer to minors only, as will be seen by reading the whole of section 1594. Here there is no charge that Brown was a minor, and no pretense that he was in the evidence. So we repudiate the view that a new trial should be had because there is no evidence to show negatively that Jenkins was not parent, guardian, or in *loco parentis* to Brown. The words do not involve such a description of the offense as to compel proof.

Neither do we subscribe to the contention that the offense is not completed if the liquor is not actually delivered to the drunkard. One of the definitions given by Webster of the word "procure" is "to acquire or provide for one's self or for another." Jenkins was provided by the inebriate with money to buy in Alabama, just across the line, and bring to him the liquor. Jenkins accordingly bought it in Alabama, and brought it to Mississippi for delivery to Brown, when he was arrested. It is idle to say he did not bring it to Mississippi. True, he gave it, for some purpose of his own, easily to be surmised, to a boy on the train for notice and safe-keeping. But he came with it on that same train, and was the real custodian. The boy was his mere instrument.

*Affirmed.*